IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GENERAL ELECTRIC COMPANY,** | ) | **CASE NO. 1:11CV00837** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JUDGE DONALD C. NUGENT** |
| v. | ) | |
| | ) | **MEMORANDUM OPINION,** |
| **S&S SALES COMPANY,** *et al.* | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Plaintiff General Electric Company's ("GE") Motion to Dismiss Defendants' ("S&S") Amended Counterclaims (ECF #31) under Federal Rule of Civil Procedure 12(b)(6). The Motion is GRANTED for the reasons stated herein. S&S's amended counterclaims are dismissed.

### A. FACTUAL BACKGROUND

GE filed a complaint on April 27, 2011 for breach of contract, unjust enrichment, and payment on account relating to S&S's failure to pay for approximately $335,000 in lighting products. S&S responded on July 1, 2011 with counterclaims for breach of contract and violation of the Robinson-Patman Act ("RPA"). The Court dismissed these claims on September 19, 2011.

Following the dismissal of S&S's original counterclaims, S&S sought leave to amend its answer and counterclaims. The Court granted leave to amend. S&S subsequently asserted six

1

counterclaims as follows:

1. **Count One: Violation of Robinson-Patman Act, 15 U.S.C. § 13(a)**

S&S alleges that GE "engaged in a pricing system with certain of GE's favored distributors" under which it "forced S&S Sales Company to accept a product mix of automotive lighting products manufactured by GE" in addition to sealed beam automotive lighting products. S&S portrays itself as a "disfavored purchaser" compared to other similarly situated distributors who allegedly are not subject to the product mix requirements, thereby resulting in "substantial lessening and diminishment of competition." S&S claims that, as a consequence of the product mix requirements, S&S has "lost substantially all of its business, assets and profits during the relevant time period."

2. **Count Two: Breach of Contract**

S&S further contends that GE breached its contract by "elimination of drop shipments to customers of S&S Sales Company, the imposition of a mandatory product mix, and its freezing of accounts" for S&S.

3. **Count Three: Promissory Estoppel**

S&S seeks by way of promissory estoppel to enforce an alleged promise by GE to "provide drop shipments to the customers of S&S Sales Company, thereby eliminating any need for S&S Sales Company to maintain any warehoused inventory."

4. **Count Four: Unjust Enrichment**

S&S next alleges that "GE has gained and appropriated revenue rightfully belonging to S&S Sales Company" by "previously supplying products directly to

customers of S&S Sales Company," causing "substantial detriment."

### (5) Count Five: Tortious Interference With Contract; and
### (6) Count Six; Tortious Interference With Business Relationship

Finally, S&S next alleges that it had "contractual relationships with numerous retailer customers" as well as "valuable business relationships" with which GE "intentionally, willfully, maliciously, in bad faith and/or with a conscious and reckless disregard for S&S Sales Company's legal rights interfered."

As discussed, GE has moved to dismiss the amended counterclaims. S&S has responded, and GE has replied. Thus, the Motion to Dismiss is ripe for review.

### B. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) directs the Court to dismiss a complaint if it fails to state a claim upon which relief may be granted. In considering a motion to dismiss under Rule 12(b)(6), the Court must assess, given the material required to be in the complaint (or as here, in the amended counterclaims), whether the complainant can prove a set of facts entitling him to recovery on the allegations against the moving party. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). In making this assessment, the Court must take only well-pleaded factual allegations as true and reject allegations that are nothing more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1964-65; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009). Indeed, under the now-familiar standard articulated in *Iqbal* and *Twombly*, a complaint does not suffice if it merely tenders "naked assertions" devoid of "further factual enhancement." *Iqbal*, 129 S.ct. at 1949 (quoting *Twombly*, 500 U.S. at 557)**.** Such a complaint should be dismissed, thereby sparing litigants the burden of unnecessary

pretrial and trial activity. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

### C. DISCUSSION

#### 1. S&S Does Not State A RPA Claim

S&S's amended RPA claim still fails to allege actionable conduct. As in its original complaint, S&S continues to complain of a secondary-line injury under the RPA, which requires S&S to demonstrate that: (1) the relevant sales "were made in interstate commerce"; (2) the products were of "like grade and quality"; (3) GE discriminated in price between S&S and another customer; and (4) the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored customer other than S&S. *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006).[1] S&S has not met the pleading requirements with respect to the RPA claim.

#### a. The Counterclaims Do Not Allege Price Discrimination

The RPA provides in relevant part that "[i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price . . . ." 15 U.S.C. § 13(a). The RPA does not prohibit all discrimination by a seller.

---

[1] Price discrimination claims are classified as "primary line," "secondary line," and "tertiary line." "Primary-line cases entail conduct — most conspicuously, predatory pricing — that injures competition at the level of the discriminating seller and its direct competitors." *Volvo Trucks N. Am.*, Inc., 546 U.S. at 176 (citations omitted). A secondary-line price discrimination claim, which S&S purports to assert here, is a claim where the allegedly injured party is in competition with a favored customer of the same seller. *See George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F .3d 136, 141 n. 2 (2d Cir.1998) (citation omitted). "Tertiary-line cases involve injury to competition at the level of the purchaser's customers." *Volvo Trucks N. Am., Inc.*, 546 U.S. at 176 (citation omitted).

Rather, as this Court noted in the opinion dismissing S&S's original counterclaims, the RPA is directed to price discrimination and only price discrimination. (ECF #21, at 2 citing *Black Gold, Ltd. v. Rockwool Indus., Inc.*, 729 F.2d 676, 682 (10th Cir. 1984) (the RPA "is directed to price discrimination and nothing more")). The RPA reaches terms and conditions of sale other than price only to the extent that such terms' "only practical effect [is] to establish discriminations in price, precisely the evil at which the statute was aimed." *Id*. (quoting *Corn Prods. Refining Co. v. FTC*, 324 U.S. 726, 740 (1945)).[2] Thus, "the Act does not prohibit all forms of discrimination among customers but only those that relate to price or that serve as disguised price discrimination." *Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 502 F. Supp. 637, 647 (D.N.J. 1980); *see also Cecil Corley Motor Co. v. Gen. Motors Corp.*, 380 F. Supp. 819, 850 (M.D. Tenn. 1974) ("[T[he [RPA] is not all-encompassing, and does not provide relief against every form of unfair or inequitable treatment of customers. It does not, for example, reach what arguably is the most extreme discrimination of all: namely, a total refusal to even deal with a particular individual or class of customers.")

  The RPA allegations in S&S's amended counterclaims suffer from the same fatal deficiency as the RPA allegations in the original counterclaims. Specifically, S&S does not allege except in conclusory fashion that GE is engaged in any form of price discrimination. Rather, S&S complains about GE's alleged "practice of forcing the mandatory product mix on [S&S] but not on its direct and actual competitors." Though S&S conclusorily alleges in the

---

[2] Other statutory provisions address terms that are not at issue here, including terms addressing the payment of commissions and the furnishing of services or facilities for processing or handling. *See* 15 U.S.C. § 13.

amended counterclaim that GE "engaged in a [discriminatory] pricing system," this Court is not obligated to consider conclusory allegations on a motion to dismiss. Indeed, S&S's explanation of GE's actions makes clear that S&S cannot point to a discriminatory pricing scheme, as the "pricing system" S&S complains of involved "requiring [S&S] to purchase products (such as capsules and minis) that it cannot profitably resell, thus significantly reducing S&S's overall profit margin and requiring it to increase the resale price for sealed beamed products in order to maintain a reasonable profit margin, while its direct and actual competitors are not subjected to similar price increase restraints." S&S conspicuously *does not allege* that it has been unable to buy the products from GE for the same price as its competitors.

Although requirements which indirectly influence price can amount to "disguised price discrimination," *Miller Brewing Co.*, 502 F. Supp. at 647, S&S counterclaims do not provide any basis for such a conclusion. Indeed, S&S does not claim that it is unable to purchase the sealed automotive beam products at the same price as its competitors. Moreover, S&S fails to cite any authority to support extension of the RPA to product mix requirements; the sparse authority that S&S does cite is inapposite. Because the Supreme Court "'[n]arrowly interpret[s]' the RPA" and avoids "permitting innovative applications of the RPA," this Court declines to broaden the scope of the RPA to encompass product mix requirements, particularly without precedent to indicate that such a broadening would be consistent with the statute's narrow focus on price discrimination. *See New Amsterdam Cheese Corp. v. Kraftco Corp.*, 363 F. Supp. 135 (S.D.N.Y. 1973) (discrimination in selling to plaintiff different product lines from plaintiffs' competitors does not violate the RPA).

6

> b. **The Counterclaims Do Not Allege That The Product Mix Requirements Implicate Products Of "Like Grade And Quality"**

In addition to not alleging a cognizable price discrimination claim, S&S does not attempt to respond to GE's argument that, by complaining about a mix of products, S&S has not alleged discrimination with respect to products of "like grade and quality" as the RPA requires. This Court found the original RPA counterclaim deficient in this respect. (ECF #21, at 3.) Likewise, the amended counterclaims are deficient and must be dismissed because they do not allege price discrimination respecting products of like grade and quality, but rather establish quite clearly that S&S is required to purchase products of a different grade and quality.

## 2. S&S Does Not State A Breach Of Contract Claim.

A cognizable breach of contract claim requires a plaintiff to allege: (1) the existence of a binding contract; (2) performance by S&S; (3) breach by GE; and (4) damage to S&S as a result. *Thomas v. Publ'rs. Clearing House*, 29 F. App'x 319, 322 (6th; Cir. 2002) (citing *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994)).

S&S does not plead that it has performed under the contract. This alone defeats S&S's breach of contract claim.

Although S&S claims for the first time in its briefing that its performance under the parties' Distributor Agreement was excused by GE's alleged breach of contract, the amended counterclaims contain no allegations that S&S performed under the contract or that S&S's performance was excused. This new, unpleaded theory cannot survive the Motion to Dismiss. It is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss. *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989); *see*

7

*also Car Carriers v. Ford Motor Co.,* 745 F.2d 1101, 1007 (7th Cir. 1984).  Because a motion to dismiss tests the sufficiency of the pleadings, courts do not consider "after-the-fact allegations" raised in briefs to determine the sufficiency of a pleading.  *See Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007).

      Moreover, S&S does not identify any provision of the contract that GE allegedly breached.  S&S fails to point to any contractual provision requiring drop shipments, or prohibiting a product mix requirement.  This omission is fatal to S&S's breach of contract claim, as it falls short of the requirements imposed by Federal Rule of Civil procedure 9(b), and the *Iqbal-Twombly* line of cases. Although S&S's briefing alludes to oral modification of the written contract, this theory was not pled.  As discussed, the Court will not consider unpled theories raised for the first time in response to a motion to dismiss.

      Even if S&S's oral-modification theory had been pled, it would be precluded by the parties' Distributor Agreement – which, as the Court previously noted, is incorporated by reference into the complaint – and the Ohio Uniform Commercial Code.  The Distributor Agreement provides in relevant part that, "No waiver or modification of this Agreement, or of any of its terms, other than a modification as provided in Article 11 herein, may be made, unless such waiver or modification is in writing and signed by such Officer or Manger.  Such Manager has no authority to alter prices, terms, or conditions without approval of General Electric Company, GE Lighting."  Such provisions in sales contracts are enforceable under the Ohio Uniform Commercial Code, which provides: "A signed agreement which excludes modification or recision except by a signed writing cannot be otherwise modified or rescinded . . ." Ohio Rev. Code § 1302.12(B).

### 3. S&S Does Not State A Claim For Unjust Enrichment Or Promissory Estoppel

The existence of an express contract precludes claims for unjust enrichment and promissory estoppel. *See Total Coverage, Inc. v. Cendant Settlement Servs. Group, Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (affirming dismissal of claims of quantum meruit, unjust enrichment, and promissory estoppel because plaintiff could not "plead alternative theories that necessarily fail where an express contract defines the rights of the parties" notwithstanding the right to plead alternative theories under Rule 8). Here, it is undisputed that an express contract governs the parties' relationship. Thus, the alternatively pled theories of unjust enrichment and promissory estoppel are not viable as a matter of law.

### 4. S&S Does Not State A Claim For Tortious Interference With Contract Or With Business Relationship

S&S may not obtain consequential damages in tort where such damages are precluded by the parties' contract. S&S concedes that claims for tortious interference must be premised upon a legal duty independent of a contract. Absent the parties' Distributor Agreement, GE would have no obligation to sell products to S&S so as to enable its other contractual and business relationships. In *Digital & Analog Design Corp. v. North Supply Co.*, 540 N.E.2d 1358 (Ohio 1989), the Ohio Supreme court held that "[i]t is well established that though a breach of a duty under contract or else necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference" unless there is some indication that the interference was more than "a mere consequence of such breach." *Id.* at 1368 (internal quotations omitted). The amended counterclaims provide no such indication. GE's duties to

9

S&S are limited to those set forth in the Distributor Agreement.  As such, S&S's tort claims fail as a matter of law.

### D.  CONCLUSION

For the reasons explained herein, GE's Motion to Dismiss S&S's amended counterclaims is GRANTED in its entirety.  The amended counterclaims are dismissed under Rule 12(b)(6).

IT IS SO ORDERED.

>                 s/Donald C. Nugent
>                 DONALD C. NUGENT
>                 UNITED STATES DISTRICT JUDGE

DATED: 7/17/2012